Bobby ROGERS, Administrator of the Estate of Oza Mae Rogers, Deceased, Movant,

v.

Dr. Morton L. KASDAN and Humana of Kentucky, Inc. d/b/a Suburban Hospital, Respondents.

Supreme Court of Kentucky.

Feb. 17, 1981.

As Amended March 3, 1981.

M. L. Perkinson, LaGrange, for movant.

John T. Ballantine, Louisville, for Dr. Kasdan.

Frank P. Doheny, Jr., and Bradley R. Hume, Woodward, Hobson & Fulton, Louisville, for Humana.

STEPHENS, Justice.

There are two issues before the court which will be discussed in the following order: (1) Whether there was substantial evidence to support the jury verdict in the trial court, and (2) whether the jury instructions with respect to the liability of respondent Humana of Kentucky, Inc., d/b/a Suburban Hospital (hereinafter Humana), were proper.

## I. WAS THERE SUBSTANTIAL EVIDENCE TO SUPPORT THE JURY VERDICT?

Oza Mae Rogers died of brain damage seven days after she sustained injuries in an automobile accident. Bobby Rogers, administrator of the estate, sued both Suburban Hospital and Dr. Morton Kasdan, the treating physician, for wrongful death. At trial, the jury returned a verdict for Rogers and awarded $204,864.84 damages, apportioned 60% against the hospital and 40% against the doctor. The Court of Appeals reversed the judgment and directed that the complaint be dismissed, holding that the negligence of the hospital was not a substantial factor in causing Mrs. Rogers' death and that the doctor's actions did not amount to a failure to meet the required standard of care. We disagree.

There was more than sufficient evidence introduced at trial to create a jury question on each of these issues. Briefly, our review of the record reveals testimony from the hospital administrator and members of the nursing staff that adopted rules of hospital procedure were not followed in Mrs. Rogers' case. Input/output records for fluids were not accurately compiled or totaled. Emergency room records were not

adequately completed. There were discrepancies among the various sets of records, and many were illegible and incomplete. The doctor's written orders did not correspond with the written records of the care actually provided, and the nurses' notes did not comport with the medication records.

Mrs. Rogers' death was caused by brain damage which resulted from untreated water intoxication brought on by more fluid than her body could handle. We are convinced that the evidence was sufficient to support the jury's finding that the hospital's negligence was a substantial factor in causing her death. Two expert witnesses so testified, and the jury was entitled to accept the theory of the plaintiff as opposed to that of the defendant, which was also supported by expert testimony.

■ There is also ample support in the record for the jury's finding of negligence on the part of the treating physician, Dr. Kasdan, a plastic surgeon. Three doctors testified for the plaintiff, each expressing the opinion that an impact sufficient to cause Mrs. Rogers' facial injuries should have alerted a plastic surgeon to the possibility of brain injury. Further, Dr. Kasdan admitted that the drug he prescribed was later discontinued because it conceals signs of neurological problems, and is specifically inappropriate for patients with head injuries.

■ Two of the expert witnesses for the plaintiff stated unequivocally that Mrs. Rogers' death was caused in part by deficiencies in medical care rendered by both the doctor and the hospital, and that the care rendered was not medically sound practice. The Court of Appeals explained that, in its estimation, the medical procedures used did not fall below the standard of conduct applicable to the circumstances of the case. However, the real question is whether the estimation of the jury is supported by substantial and competent evidence. *Commonwealth v. S & M Land Co., Inc.*, Ky., 503 S.W.2d 495 (1972); *Ohio Valley Terminix Corp. v. Rudolph*, Ky., 444 S.W.2d 114 (1969). If it was, the appellate court may not invade the province of the jury by substituting its judgment for that of the proper trier of fact. Our review of the record reveals substantial evidence to support the verdict of the jury.

## II. WERE THE JURY INSTRUCTIONS WITH RESPECT TO HUMANA'S LIABILITY PROPER?

The trial court instructed the jury that Humana had a duty "to exercise that degree of care ordinarily used by hospitals under circumstances like or similar to those shown in this case." Also, the trial court said, the hospital had the following additional duties:

a. Maintain procedures appropriate and adequate to determine whether the nurses and the staff of the hospital were maintaining adequate medical records which would enable the patient to receive effective continuing care as would enable a physician or other practitioner to assume the care of the patient at any time.

b. To provide nurses knowledgeable of the requirements for adequately providing patient care necessary under circumstances like or similar to those in this case.

c. Maintain procedures appropriate and adequate to determine whether the physicians on the staff of the hospital were carrying out their duties in a manner consistent with good medical practices.

d. To maintain procedures appropriate and adequate to determine whether the nurses on the staff were properly monitoring the fluid input and output of the patient under circumstances like or similar to those in this case.

e. To maintain procedures appropriate and adequate to determine whether the nurses on the staff of the hospital were following the rules pertaining to

the dispensing of drugs and properly using the Physicians Desk Reference and other manuals available to them.

f. To maintain procedures appropriate and adequate to determine whether the nurses were carrying out their duties in a manner consistent with good medical and hospital care under similar circumstances.

■ The general rule for the content of jury instructions on negligence is that they should be couched in terms of duty. They should not contain an abundance of detail, but should provide only the bare bones of the question for jury determination. This skeleton may then be fleshed out by counsel on closing argument. *Cox v. Cooper*, Ky., 510 S.W.2d 530, 535 (1974).

■ We believe that the above instruction fails to meet this "bare bones" test. First, it gives undue prominence to facts and issues. Palmore, Kentucky Instructions to Juries, Vol. 2, Section 13.11e; *Fields v. Rutledge*, Ky., 284 S.W.2d 659, 662 (1955). Whether the hospital hired knowledgeable nurses, or had proper supervision for staff physicians, or accurate record keeping, and so forth, were all evidently questions for the jury to consider. While they constituted criteria that the jury might use to decide the question of ordinary care, listing them in this manner was not necessary to pose the issue of the hospital's duty.

■ In addition, the instructions should not make a rigid list of ways in which a defendant must act in order to meet his duty. In *Croushorn Equipment Co. v. Moore*, Ky., 441 S.W.2d 111, 115 (1969), an automobile accident case, the jury was instructed that "it was the duty of the driver of the defendant, Croushorn Equipment Company, . . . not to stop the truck, leave it standing or cause it to stop or be left standing upon the main traveled portion of the highway." Regarding this instruction this court stated that:

In spelling out the duty of Brassfield by enumerating suggested means of its performance, the court unduly called to the jury's attention various methods in which Brassfield might have acted. One vice of listing the means in the instruction was the apparent suggestion of the many things that Brassfield could have done, thereby inferring that his failure to do any of them was all the more palpable. *Id.*

In the instant case, the listing of various means by which the plaintiff contended the hospital failed to exercise the proper standard of care begged the jury to find some minor or technical error. It could have given them the false impression that unless all these procedures were complied with exactly, the hospital breached its duty. The effect of the instruction was to demand more of the hospital than the law requires. *Croushorn Equipment Co., supra.*

We conclude that the jury instruction given in the circuit court was improper and prejudicial. A more satisfactory instruction on the issue of the hospital's duty of ordinary care is as follows:

It was the duty of the defendant Humana and its employes to exercise toward Mrs. Rogers that degree of care and skill ordinarily expected of reasonable and prudent hospitals under similar circumstances. If you are satisfied from the evidence that they failed to comply with that duty and that such failure on their part was a substantial factor in causing the death of Mrs. Rogers, you will find for the plaintiff against Humana; otherwise you will find for Humana.

The decision of the Court of Appeals is reversed, and the cause is remanded to the trial court with directions that the judgment against the respondent Kasdan in accordance with the verdict be reinstated and that Humana be granted a new trial limited solely to the issue of negligence.

All concur, except STERNBERG, J., who did not sit.