OLFICE, INC., d/b/a Club
Olympic, Appellant,

v.

Samuel W. WILKEY, Appellee.

No. 2004–SC–0514–DG.

Supreme Court of Kentucky.

Aug. 25, 2005.

Matthew P. Cook, Frank Hampton Moore, Jr., Cole, Moore & Baker, Bowling Green, Counsel for Appellant.

D. Bailey Walton, Lanphear & Walton, Bowling Green, Counsel for Appellee.

JOHNSTONE, Justice.

This case comes to us on discretionary review of a decision of the Court of Appeals vacating a judgment of the Warren Circuit Court in a slip and fall negligence action. Using "bare bones" instructions, a jury ruled in favor of Appellant, Olfice, Inc., d/b/a Club Olympic, finding that it had not breached its duty of care to Appellee, Samuel W. Wilkey. The Court of Appeals, however, concluded that the instructions were inadequate to instruct the jury on a business owner's affirmative legal duty toward its business invitees. After reviewing the record, we reverse the Court of Appeals and reinstate the judgment of the trial court.

Samuel W. Wilkey, a Bowling Green chiropractor, was a frequent patron of Club Olympic, a health club located near Bowling Green, Kentucky. On February 7, 2001, Wilkey was lifting weights at the club when he felt a twinge of pain in his right arm. Wilkey went to the steam room to work out the tightness in his shoulder before proceeding to the gym's swimming pool to cool down. Wilkey claimed that as he was entering the pool, his foot slipped out from under him and he fell backwards onto his elbow. Wilkey suffered a ruptured tendon and torn rotator cuff in his right shoulder, which necessitated surgical repair. Notably, although Wilkey subsequently alleged that his injuries were the result of his fall at the pool, he did not report the incident to Club Olympic until April 2001, after his surgery. In fact, Wilkey reported his shoulder injury as occurring during weight lifting on the day in question as reflected not only in the incident report completed by the club staff, but also as reported to both his orthopedic surgeon and the hospital staff prior to his surgery.

On February 6, 2002, Wilkey filed a complaint in the Warren Circuit Court alleging that Club Olympic was negligent in failing to maintain the premises in a safe and sanitary condition. Wilkey asserted that Club Olympic's negligent maintenance of the pool steps was the direct cause of his injuries.

A jury trial was held on February 12, 2003. At the close of the evidence, the trial court denied both parties' motions for directed verdicts. Thereafter, Wilkey's counsel objected to the trial court's proposed jury instructions on the grounds that they only informed the jury about the general duty of ordinary care applicable in all negligence cases. Wilkey asserted that in addition to the general duty to exercise ordinary care, the jury should have been instructed that as a business owner, Club Olympic had specific duties to its business invitees to: (1) undertake a reasonable inspection of the pool, (2) take reasonable precautions to protect its invitees from foreseeable danger, and (3) warn business invitees if Club Olympic had actual knowledge of the danger. The trial court rejected Wilkey's proposed instructions as containing extraneous information that was not required under the typical "bare bones" approach used in Kentucky.

After the jury was instructed, the attorneys for both parties made their closing arguments. Club Olympic's closing argument lasted approximately ten minutes,

and Wilkey's argument lasted approximately fifty minutes. The jury then retired to deliberate, returning less than forty-five minutes later with a verdict in favor of Club Olympic. The jury unanimously answered the threshold issue of liability in favor of Club Olympic.

Wilkey appealed and the Court of Appeals vacated the judgment of the trial court and remanded the matter for a new trial. The Court of Appeals faulted the jury instructions for failing to inform the jury that "Club Olympic had an affirmative legal duty to its business invitees to protect from dangers that should have been discoverable to the premises owners by means of a reasonable examination of the premises." Essentially, the Court of Appeals concluded that the jury instructions were "too emaciated" to adequately inform the jury of the law and sufficiently "bear the weight of the evidence." This Court thereafter granted Club Olympic's motion for discretionary review.

In considering the use of bare bones jury instructions, the Court of Appeals in this case commented that "[t]he case law is really rather sparse as to the proper standard for instructing a jury." We note, however, that there are certain well-settled principles in Kentucky law regarding the proper method of instructing a jury. In *Cox v. Cooper*, 510 S.W.2d 530 (Ky.1974), our predecessor court first announced the "bare bones" jury instruction method, which was described by Justice Palmore as follows:

> It may sometimes be appropriate for instructions to define the rights of a litigant, as for example in the instance of a peace officer sued for assault incident to an arrest, but as a general proposition [instructions] should be couched in terms of duties only. Recovery hinges not on the question of who was within his rights, but who breached a duty. If

the duty is simple enough to be stated without defining it in terms of the rights of one party or the other, that is all that is necessary, desirable, or proper.... Our approach to instructions is that they should provide only the bare bones, which can be fleshed out by counsel in their closing arguments if they so desire.

*Id.* at 535.

Following *Cox,* several other decisions from this Court and the Court of Appeals have reaffirmed our adherence to the use of bare bones instructions. *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814, 824 (Ky.1992). ("In instructing juries, Kentucky uses the 'bare bones' method.... '[Instructions] should not contain an abundance of detail, but should provide only the bare bones of the question for jury determination.'") *Rogers v. Kasdan,* 612 S.W.2d 133, 136 (Ky.1981). ("The general rule for the content of jury instructions on negligence is that they should be couched in terms of duty. They should not contain an abundance of detail, but should provide only the bare bones of the question for jury determination.") *King v. Grecco,* 111 S.W.3d 877, 882 (Ky.App.2002). ("[I]t is apparent that Kentucky is not a jurisdiction which favors instructing the jury at length regarding every subtle nuance of the law which may be relevant to a particular case.")

In addition to case law, several commentators have enunciated similar principles.

> [T]he function of instructions is only to state what the jury must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof. In Kentucky, the content of jury instructions on negligence should be couched in terms of duty. They should not contain an abundance of detail, but should provide only the 'bare bones' of the question for jury determination.

Kurt A. Philips, Jr., 7 *Kentucky Practice: Rules of Civil Procedure Annotated*, § 51 (5th ed.1995) (*citing Webster v. Commonwealth*, 508 S.W.2d 33, 36 (Ky.1974)). Justice Palmore likewise observed:

> The basic function of instructions in Kentucky is to tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who bears the burden of proof on that issue. In other jurisdictions, as at common law, it may be appropriate to say that the purpose of instructions is to advise the jury on the law of the case, but not in this state.

Justice Charles M. Leibson, "Legal Malpractice Cases: Special Problems in Identifying Issues of Law and Fact and in the Use of Expert Testimony," 75 Ky. L.J. 1, 40 (1986) (*quoting* John S. Palmore, *Kentucky Instructions to Juries*, § 13.01 (1977)).

■ From the case law and commentary, it is clear that Kentucky law mandates the use of "bare bones" jury instructions in all civil cases. *See Lumpkins v. City of Louisville*, 157 S.W.3d 601 (Ky. 2005). The Court of Appeals in this case correctly stated that jury instructions should refrain from elaborating on an abundance of detail, but still strike the proper balance in providing enough information to a jury to make it fully aware of the respective legal duties of the parties. *See also King v. Ford Motor Co.*, 209 F.3d 886 (6th Cir.2000). Indeed, "bare bones" instructions serve the courts and juries well because they pare down unfamiliar and often complicated issues in a manner that jurors, who are often not familiar with legal principles, can understand.

■ "Bare bones" instructions are proper if they correctly advise the jury about "what it must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof" on that issue. *Meyers*, 840 S.W.2d at 824; Leibson, *supra*. The question to be considered on an appeal of an allegedly erroneous instruction is whether the instruction misstated the law. *Meyers, supra*, at 823. It is within a trial court's discretion to deny a requested instruction, and its decision will not be reversed absent an abuse of that discretion. *King, supra*.

■ Thus, the question herein is whether the instructions misstated the law by failing to sufficiently advise the jury "what it [had to] believe from the evidence in order to return a verdict in favor of the party who [had] the burden of proof." *Meyers, supra*. Jury Instruction No. II provided:

### Instruction No. II

The defendant, Olfice, Inc., d/b/a Club Olympic acting through its agents and employees, had a duty to exercise ordinary care to maintain and keep the premises and club areas in a reasonably safe condition for the use of its business invitees.

"Ordinary Care" means such care as a jury would expect an ordinarily prudent business to exercise under similar circumstances.

Are you satisfied from the evidence that the defendant failed to satisfy its duty and that such failure was a substantial factor in causing the plaintiff's fall and injuries[?]

_____YES _____NO (CHECK ONE)

There was no dispute that Wilkey was a business invitee of Club Olympic or that the club owed such an invitee the duty to make its premises reasonably safe. *See Perry v. Williamson*, 824 S.W.2d 869 (Ky. 1992). As such, the language of the instruction was a correct statement of the law relative to the duty owed by a business owner to invitees. *Scuddy Coal. Co. v.*

*Couch,* 274 S.W.2d 388, 390 (Ky.1954). Nevertheless, Wilkey wanted to further emphasize his status as a business invitee in proposed language that read, "The Defendant also had a duty to its business invitees to inspect the pool for latent or concealed dangers not known to the Defendant and to take reasonable precautions to protect its business from dangers which are foreseeable from the arrangement or use of the pool." Our cases, however, are clear that such elaboration is not required within the language of the instruction. Certainly, the duty to keep the premises in a reasonably safe condition encompasses the additional specific duties.

In *Rogers,* we considered instructions in a negligence case that contained several specific duties in addition to the general duty to exercise ordinary care. 612 S.W.2d at 135. While these specific duties were intended to inform the jury what the defendant should have done to meet the ordinary care requirement, we rejected such an approach because the additional duties were not necessary to the dispositive question of whether the defendant had breached the duty of ordinary care. *Id.* at 136. "[I]nstructions should not make a rigid list of ways in which a defendant must act in order to meet his duty." *Id.* Likewise, Wilkey's proposed instructions were unnecessary under the "bare bones" approach because they created factors for the jury to consider when answering the larger issue of breach of ordinary care.

■ Although Wilkey's proposed instructions certainly contained valid legal propositions, they exceeded the requirements of the "bare bones" approach because the dispositive issue in this case—Club Olympic's duty of care—could be resolved through the court's tendered instructions. *See Ford Motor Co. v. Fulkerson,* 812 S.W.2d 119, 122 (Ky.1991). ("Unlike the many jurisdictions that use pattern instructions, and otherwise explain the law of the case to the jury, the practice in Kentucky abjures the abstract and requires the trial court, applying (rather than stating) the underlying legal principles, to frame the dispositive issue.") The controlling issue is not which set of proposed instructions best stated the law, but rather whether the delivered instructions misstated the law. *Meyers, supra,* at 823. The instructions herein clearly did not. *See Rojo, Inc., v. Drifmeyer,* 357 S.W.2d 33, 35 (Ky.1962). ("The owner or occupant of the premises owes a duty to an invitee to use ordinary care to have the premises in a reasonably safe condition.")

■ "Bare bones" jury instructions must be given with the understanding that they are merely a framework for the applicable legal principles. It becomes the role of counsel, then, to flesh out during closing argument the legal nuances that are not included within the language of the instruction. *See Rogers,* 612 S.W.2d at 136. This principle was aptly stated by Justice Palmore in the *Cox* decision, wherein he explained what a lawyer should do if he or she is not satisfied with the trial court's instructions: "[I]f counsel felt that the jury was too thick to get the point all he had to do was to explain it in his summation." *Cox,* 510 S.W.2d at 535.

Here, after overruling Wilkey's objection to the jury instructions, the trial court informed counsel several times that he was free to argue any of the points he believed were left out of the jury instructions during closing argument. The record reflects that during his fifty minute closing argument, Wilkey's counsel thoroughly explained the facts of the case, the definition of an "invitee," and the distinct duties imposed on each of the parties.

Contrary to the Court of Appeals' decision, we conclude that the jury instructions provided sufficient guidance for the jury to

decide the threshold issue of breach of duty of care in this case. The instructions did not misstate Kentucky law, and the trial court did not abuse its discretion in failing to grant Wilkey's request to substitute his own proposed jury instructions. Accordingly, we reverse the decision of the Court of Appeals and reinstate the judgment of the Warren Circuit Court.

All concur.